## TURNER v. NEW ORLEANS ICE CREAM CO., Inc. *
### No. 14871.

Court of Appeal of Louisiana. Orleans.
May 21, 1934.

John A. Woodville, of New Orleans, for appellant.

*Rehearing denied June 11, 1934.

J. C. Henriques and Harry M. Mayo, Jr., both of New Orleans, for appellee.

JANVIER, Judge.

In the course of his employment by defendant, Lincoln Turner fell and injured his testicles and his prostate gland.

He was paid compensation for a period of seven weeks and two days, after which he was discharged as cured by defendant's doctors.

About eight months later, claiming that he had not recovered from his former injuries, he filed this suit in which he seeks to recover compensation for permanent total disability.

Defendant asserts that when plaintiff was discharged as cured his recovery had been complete; that later he returned to work and continued in defendant's employ for a period of almost 4½ months without complaint; and that it was only after his employment was terminated because of the cutting down of forces that any suggestion was made that he was still suffering from his original injuries.

Defendant also asserts that if plaintiff is now incapacitated, or if he was incapacitated at the time of the filing of this suit. the said disability did not result in any way from the original injury.

In the district court judgment was rendered for defendant and plaintiff's suit was dismissed.

The original injury was received on October 30, 1931, and plaintiff was under the care of defendant's physicians from that time until December 19, 1931, on which day he was discharged as completely cured, and until which time he was paid compensation.

Plaintiff seeks to prove that for about one month after his discharge he attempted to work, but that "so terrible was the pain and anguish he suffered * * * he was unable to continue working."

Although he alleges that "he has not been able to work since January, 1932," the record leaves no room for doubt that he worked during the greater portion of the months of April, May, June, and July, and during the first half of August, 1932.

During July he returned to defendant's physicians suffering from "pain about the bladder and testes," but apparently he did not consider that this trouble was a recurrence of his earlier complaint, because he failed to call to the attention of the doctors the fact that he had had the former injury.

While it is true that Dr. Bradburn, testifying on behalf of defendant, admitted it to be possible that a condition such as he found in July, 1932, might be caused by trauma, he was well convinced that, as a matter of fact, the said condition in this instance was in no way actually connected with traumatic injury. He said:

"Well, anything is possible, but not within the realm of probability in this case."

Later he expressed another very positive opinion to the effect that the condition which he found in July, 1932, could in no way be associated with the original accidental injury. He stated:

"* * * The condition is not associated with a trauma. I cannot connect the two in the least."

Another doctor, testifying on behalf of plaintiff, entertained a contrary view, declaring that such a condition "would be the natural result of such an accident."

Dr. Christman, a third physician, associated with Dr. Bradburn, corroborated his views, and the district judge must have been convinced that their views were correct. The record does not warrant a reversal on this question.

It appears that prior to the original injury plaintiff had been treated for gonorrhea, though he denies that he was the same Lincoln Turner whose name appears on the records of the Touro Infirmary as having received such treatment. It is testified to by defendant's doctors that the condition which they found in July, 1932, might have resulted from gonorrhea. At any rate they were quite certain that it did not result from the original injury.

■ Of course, even if the primary cause of the disability was gonorrhea, still there would be liability under the compensation laws if it could be made to appear that the accident had had the result of stirring into activity the dormant disease. See Jones v. Lake Charles Compress & Warehouse Co. (La. App.) 153 So. 347; Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L. R. A. 1918F, 862. But there is no showing that such took place here. On the contrary, the condition of which plaintiff now complains did not manifest itself until nine months after the original injury and until several months after plaintiff had returned to work and had continued to work without complaint, and it seems beyond the realm of probability that the injury sustained in October, 1931, could have had the result of stirring into activity

nine months later a dormant gonorrheal condition.

But our conclusion that plaintiff's case must fail is based, in the final analysis, on two principles which have been universally adopted in determining controverted questions of this kind: First, that great weight must be given to the preponderating medical testimony, and, second, that on questions of fact such as this the conclusion reached by the trial judge should not be disturbed unless manifestly erroneous.

In connection with the first principle that the medical testimony should be given great weight and that the preponderating views should be adopted, unless palpably unsound, we call attention to several expressions contained in former opinions:

"In such cases as this we well realize that it is quite impossible for courts to determine with mathematical certainty whether hernia actually resulted from accident or from congenital weakness, but we would certainly err more often than we do were we to substitute for what appears to be the preponderating medical opinion any conjecture which we might ourselves make were there no medical opinions in the record." Burgess v. American Safe Deposit Co., Inc., 19 La. App. 445, 140 So. 103, 104.

"As laymen, and without the benefit of experience and learning in medical science and history, we must admit that plaintiff's theory as to causation is tempting and persuasive, in view of the apparently logical sequence of events in this case. The question of causation, however, in this case, is a problem peculiarly within the domain of medical science and the opinion of trained experts, Weller et al. v. Turnerized Roofing Co. et al., 14 La. App. 150, 129 So. 443, and we must be governed largely by the conclusions and opinions of these experts based on the circumstances and medical history of the case, and this expert opinion, when analyzed and considered as a whole, as we have heretofore pointed out, does not establish plaintiff's theory of causation with reasonable certainty." Brent v. Union Indemnity Co., 17 La. App. 694, 135 So. 735, 737.

"If we and our brother below have erred, the responsibility must rest, with the medical profession and not the judiciary." Landry v. Phœnix Utility Co., 14 La. App. 334, 124 So. 623, 625.

That questions such as this are questions of fact and that, therefore, in considering them, we should apply the rule that the district court should not be reversed unless manifestly in error, is held in Colquette v. Louisiana Central Lumber Co., 11 La. App. 140, 119 So. 714. See, also, Weller v. Turnerized Roofing Co., 14 La. App. 150, 129 So. 443.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.